UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In Re:

OLD COLONY, LLC,

Debtor.

Case No. 10-21100-HJB

Chapter

## STIPULATION AUTHORIZING AND APPROVING INTERIM USE CASH COLLATERAL

THIS STIPULATION is made this 15th day of October 2010, by and between the Debtor and Debtor in Possession, Old Colony, LLC (collectively, the "**Debtor**") and Wells Fargo Bank, N.A., successor in interest to The Jackson State Bank & Trust ("**Wells Fargo**").

### BACKGROUND:

WHEREAS, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") on October 11, 2010 (the "**Petition Date**");

WHEREAS, the Lender and the Debtor entered into a certain loan arrangement evidenced by, among other things, the following documents, instruments, and agreements (collectively, the "**Loan Documents**"): (i) a Loan Agreement dated May 10, 2007, (ii) a Promissory Note dated May 10, 2007 in the original principal amount of $16,500,000.00, (iii) a Mortgage dated May 10, 2007, and (iv) a First Amendment to Mortgage dated July 2, 2007.

WHEREAS, the Lender asserts the obligations of the Debtor to the Lender pursuant to the Loan Documents (the "**Pre-Petition Indebtedness**") are secured by a first mortgage against the Debtor's real property located in Jackson Hole, Wyoming, and a senior security interest in all rents, revenues, income, issues, royalties, profits, equipment, inventory, fixtures, and all other

tangible and intangible personal property of the Debtors (the "**Collateral**"), as set forth in the Loan Documents;

WHEREAS, the Debtor's Budget (which is annexed hereto and incorporated herein as *Exhibit A* (the "**Budget**") ) indicates that the Debtor will require the use of the Lender's cash and non-cash Collateral in order to meet the Debtor's expenses incidental to its operations;

WHEREAS, the Lender asserts that all of the Debtor's cash and available funds constitute the Lender's cash Collateral;

WHEREAS, subject to the terms and conditions of this Stipulation, the Lender is willing to permit the Debtor to use the Lender's cash and non-cash Collateral solely for the purposes set forth in, and in accordance with the terms and conditions of, the Budget and this Stipulation.

NOW, THEREFORE, subject to Bankruptcy Court approval of this Stipulation, it is hereby stipulated and agreed by and between the Debtor and the Lender as follows:

1. PRE-PETITION INDEBTEDNESS: Lender asserts that the Pre-Petition Indebtedness due as of the Petition Date (collectively hereinafter the "**Claim**") included the following amounts:

   a. $16,500,000.00 in principal, plus $1,294,363.74 in interest as of October 14, 2010, plus all other fees, costs, expenses, and costs of collection (including without limitation reasonable attorneys' fees) that have accrued and are due under the Loan Documents;

   b. Such other interest accruing from and after the Petition Date under the Loan Documents, and all fees, costs, expenses, and costs of collection (including without limitation reasonable attorneys' fees) as set forth in the Loan Documents

2

heretofore or hereafter incurred by the Lender in connection therewith, to the extent allowable pursuant to Section 506(b) the Bankruptcy Code.

c. The Claim is secured and shall constitute an allowed secured claim to the extent provided for under the Bankruptcy Code.

d. For purposes of Stipulation, Debtor assumes the truth of the Lenders assertions in this paragraph 1, but reserves all rights to challenge the nature, extent, validity, and amount of the Claim at the appropriate time.

2. USE OF CASH COLLATERAL.

a. Subject to the terms and conditions of this Stipulation, the Debtor may use the Lender's cash and non-cash Collateral solely to pay its ordinary and necessary business expenses as set forth on the Budget. The Debtor represents that, exclusive of professional fees as may be allowed by the Court, the Budget represents a projection of all likely expenses to be incurred in connection with this Chapter 11 case and the operation of the Debtor's business for the period set forth in the Budget.

b. Except as may be approved by the Court after written notice to the Lender and a hearing or after written request to the Lender and the Lender's written consent, in no event shall the Debtor use any of the Lender's cash Collateral to pay any items:

    (i) not contained in the Budget;

    (ii) in excess of 110% of the amount set forth in the Budget, whether by line item, category, or in the aggregate; and

3

    (iii) in advance of the week in which an expenditure is scheduled to be paid in the Budget.

  c. The Debtor agrees not to knowingly or intentionally incur any material administrative expenses other than as set forth in the Budget, exclusive of professional fees approved by the Bankruptcy Court pursuant to 11 U.S.C. § 330, 331, or 503(b) and fees payable pursuant to 28 U.S.C. §1930, without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing.

3. ADEQUATE PROTECTION. In consideration of and as adequate protection for any diminution in the value of the Lender's cash and non-cash Collateral:

  a. The Lender is hereby granted a post-petition security interest to the extent of any diminution in the value of the Lender's cash and non-cash Collateral in and upon all of the Debtor's assets of the same type or form of assets that secured the Claim prior to the Petition Date (the "**Adequate Protection Liens**"). The Adequate Protection Liens granted to the Lender herein may not be primed by any other lien or encumbrance, whether by order of the Bankruptcy Court or the passage of time. The Adequate Protection Liens shall be deemed valid and perfected notwithstanding the requirements of non-bankruptcy law with respect to perfection, and although not required of the Lender, the automatic stay imposed by §362 of the Bankruptcy Code is hereby modified to the extent necessary for the Lender to perfect the security interest granted herein. The Adequate Protection Liens shall be supplemental of, and in addition to, the security interest which the Lender possesses pursuant to the Loan Documents. Notwithstanding

4

anything contained herein, the Adequate Protection Liens shall not cover any cause of action or proceeds thereof recovered pursuant to Chapter 5 of the Bankruptcy Code.

b. The Adequate Protection Liens shall continue in full force and effect until the Claim has been paid in full, including all principal and, to the extent authorized by §506(b) of the Bankruptcy Code, such interest, fees, costs, and expenses, including reasonable attorneys' fees, whether currently existing or hereafter accrued and incurred, as provided for by the Loan Documents.

c. Except as ordered by the Court, the Adequate Protection Liens and the priorities of same shall not be affected by the incurrence of indebtedness pursuant §364 of the Bankruptcy Code, or otherwise. **The Debtor acknowledges, agrees, and understands that the provisions of this subsection vary from MBLR 4001-2(c) (9).**

d. Nothing contained in this Stipulation shall be deemed to be the consent by the Lender, whether express or implied, to any claims against the Collateral or the assets subject to the Adequate Protection Liens (the "**Post-Petition Collateral**") under § 506(c) of the Bankruptcy Code.

e. Lender shall have a claim pursuant to §§503(b) and 507(b) of the Bankruptcy Code which shall have priority over all other claims entitled to priority under §507(a)(1), with the sole exception of quarterly fees due to the United States Trustee pursuant to 28 U.S.C. §1930, to the extent that the use of the Lender's cash Collateral results in diminution of Lender's interest in cash Collateral as of the Petition Date in excess of the value of the Adequate Protection Liens.

 f. The Debtor shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged. The Debtor shall provide the Lender, upon entry of this Stipulation as an Order of the Bankruptcy Court, with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereafter occur.

4. FINANCIAL REPORTING. The Debtor shall furnish to the Lender such financial and other information as the Lender shall reasonably request including, but not limited to the following:

 a. On or before Friday, October 29, 2010,

  (i) a copy of the management agreement currently in force and effect between the Debtor and Terra Resort Group, LLC or such other company that is managing the Debtor's real property; and

  (ii) a copy of the Debtor's monthly financial statements for the period from December 1, 2009 through the Petition Date;

  (iii) a complete accounting of the revenue, receipts, and other income generated by the Debtor during the period from December 1, 2009 through the Petition Date, and the uses to which that revenue, receipts, and other income was put during that same time period.

 b. By Monday of each week, commencing October 18, 2010, each of the following financial reports:

  (i) A report which sets forth in reasonable detail:

        (1)    total sales for the prior week;

        (2)    total receipts for the prior week;

        (3)    comparison of the Debtor's actual performance during the prior week with the Budget and the projections contained therein; and

        (4)    a schedule of all outstanding checks or payments issued by the Debtor identifying the line item within the Budget to which they relate.

    (ii)    Any financial information and pleadings filed with the Bankruptcy Court shall be served upon the Lender as soon as practicable after such information or pleading has been filed with the Bankruptcy Court.

    (iii)    All other financial information and reports prepared by the Debtor in the ordinary course of its business, including any financial information required by the Bankruptcy Court or by the Operating Guidelines and Reporting Requirements of the United States Trustee's Office.

5.    NOTICE.    Any notice or correspondence required to be sent hereunder shall be forwarded by email at the address set forth below, and by first class mail, and shall be deemed given upon the earlier of (i) successful email transmission, or (ii) two (2) days after being deposited in the United States Mail, postage pre-paid, and addressed as follows:

If to the Lender:

    With copies to:

7

>Jeffrey D. Ganz
>Riemer & Braunstein LLP
>Three Center Plaza
>Boston, Massachusetts 02108
>jganz@riemerlaw.com

If to the Debtor:

> With copies to:

>>Donald F. Farrell, Jr.
>>Anderson Aquino LLP
>>240 Lewis Wharf
>>Boston, MA 02110
>>dff@andersonaquino.com

6. **TERMINATION.** The Debtor's right to use the Lender's cash and non-cash Collateral shall terminate ("**Termination**") upon the earliest of:

> (i) November 15, 2010;
>
> (ii) The Debtor's failure to maintain all necessary insurance as required by paragraph 3(f) above, or
>
> (iii) The material breach by the Debtor of any of the terms, conditions, or covenants of this Stipulation, which is not cured to the reasonable satisfaction of the Lender within three (3) business days of receipt by the Borrower of written notice of such breach from the Lender. To the extent that such written notice is served by the Lender and the Borrower disputes either the existence of a material breach or the satisfactory nature of any cure, the Borrower shall be entitled to request an emergency hearing to address those issues;
>
> (iv) The appointment of a Trustee for the Debtor pursuant to § 1104 of the Bankruptcy Code;

  (v) The conversion of this Case to a case under Chapter 7 of the Bankruptcy Code;

  (vi) The dismissal of this Case;

  (vii) The appointment of an examiner with any of the powers of a Trustee for the Debtor; or

  (viii) The allowance of a Motion for Relief from the Automatic Stay allowing a creditor of the Debtor to foreclose upon any material asset of the Debtor.

 b. Upon Termination, the Debtor shall immediately cease using the Lender's cash Collateral and non-cash Collateral, however, nothing herein shall be deemed a waiver of the Debtor's right to seek authority to use cash Collateral in accordance with Sections 361 and 363 of the Bankruptcy Code.

7. AUTOMATIC STAY. To the extent needed, the Automatic Stay is hereby modified to permit the Lender and the Debtor to carry out the terms and conditions of this Stipulation.

8. MODIFICATION. The Lender and the Debtor may agree to nonmaterial modifications or amendments to this Stipulation without further Order of the Bankruptcy Court. Further, the Lender and the Debtor may modify the Budget, to take effect upon Five (5) business days written notice to the Creditors' Committee, if any, the United States Trustee, and the Court.

9. EXTENSION OF STIPULATION. The Lender, in its sole and exclusive discretion, may extend this Stipulation without further Court hearing or further order of the Bankruptcy Court. If the Lender determines to do so, it shall provide written notification of such extension to all parties-in-interest.

10. **RESERVATION OF RIGHTS:** Notwithstanding the foregoing stipulation, the Lender reserves all rights and remedies it may have including, without limitation, the rights to seek additional adequate protection, to object to further use of cash collateral, to seek to terminate use of cash collateral, and to request relief from the automatic stay. Similarly, the Debtors reserve the right to oppose any such request. The Debtor further reserves the right to contest the amount and validity of the Claim, including the amount, extent, priority, enforceability of any asserted lien or security interest.

*[BALANCE OF PAGE INTENTIONALLY BLANK]*

11. COURT APPROVAL, CONDITIONS TO EFFECTIVENESS. This Stipulation shall not be effective until the entry of an Order of the Bankruptcy Court approving and authorizing the Debtor to enter into this Stipulation

**OLD COLONY, LLC**

By its Attorneys,
ANDERSON AQUINO LLP

Dated: October 15, 2010

_____
Donald F. Farrell, Jr. BBO # 159580
dff@andersonaquino.com
Anderson Aquino LLP
240 Lewis Wharf
Boston, Massachusetts 02110
(617) 723-3600

**WELLS FARGO BANK, N.A.**

By its Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: October 15, 2010

_____
Donald E. Rothman, BBO # 431047
drothman@riemerlaw.com
Jeffrey D. Ganz, BBO #564375
jdganz@riemerlaw.com
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

11

# Inn at Jackson Hole Cash Forecast
## Postpetition Obligations
### Cash Flow Projections / Budget

| | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Week 15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 18-Oct | 25-Oct | 1-Nov | 8-Nov | 15-Nov | 22-Nov | 29-Nov | 6-Dec | 13-Dec | 20-Dec | 27-Dec | 3-Jan | 10-Jan | |
| | 47,204 | 39,144 | 5,874 | 23,477 | 25,052 | 12,128 | 21,420 | 44,870 | 55,375 | 88,125 | 91,575 | 118,725 | 118,930 | |
| | 30,940 | 35,376 | 33,431 | 17,892 | 14,426 | 29,742 | 50,000 | 40,000 | 40,000 | 40,000 | 50,000 | 50,000 | 50,000 | 511,927 |
| | | | | | | | | | | | | | | 1,800 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 200 | 200 | 200 | 200 | 10,750 |
| | 500 | 500 | 250 | 250 | 250 | 250 | 250 | 500 | 500 | 1,500 | 2,500 | 1,500 | 1,500 | 24,162 |
| | | 6,000 | | | | 5,000 | | | | 5,000 | | | | 12,590 |
| | 500 | 300 | | | | | 500 | 700 | 1,500 | 2,000 | 3,000 | 2,000 | 2,000 | 13,218 |
| | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 109,859 |
| | | 15,500 | | 10,500 | | 10,500 | | 14,800 | | 18,500 | | 22,000 | | 56,246 |
| | | 30,446 | 3,000 | | 22,400 | | 3,200 | | | | 200 | | | 14,000 |
| | | | | | | | 5,000 | 5,000 | | | | 6,000 | | 30,000 |
| | 500 | 500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 500 | 1,000 | 4,000 | 8,000 | 4,000 | 4,000 | 17,468 |
| | 1,000 | 1,000 | 1,000 | 1,867 | 1,000 | 1,000 | 1,000 | 1,867 | 1,000 | 1,000 | 1,000 | 1,867 | 1,000 | 3,190 |
| | | | 850 | | | | | 850 | | | | 850 | | 1,731 |
| | | | 500 | | | | | 500 | | | | 500 | | 4,522 |
| | | | 1,028 | | | | | 1,028 | | | | 1,028 | | 27,015 |
| | 250 | 250 | | | | | 300 | 1,000 | 1,000 | 2,000 | 3,000 | 2,000 | 2,000 | 1,200 |
| | 50 | 50 | | | | | | 50 | 50 | 250 | 250 | 250 | 250 | 16,500 |
| | | | 5,500 | | | | | 5,500 | | | | 5,500 | | 17,100 |
| | 11,900 | 11,900 | | | | | 2,600 | | | | 2,600 | | | 11,900 |
| | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 3,500 |
| | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 10,000 |
| | | | | | | | 10,000 | | | | | | | |
| | 17,000 | 68,646 | 15,828 | 16,317 | 27,350 | 20,450 | 26,550 | 29,495 | 7,250 | 36,550 | 22,850 | 49,795 | 13,050 | 386,696 |
| | 61,144 | 5,874 | 23,477 | 25,052 | 12,128 | 21,420 | 44,870 | 55,375 | 88,125 | 91,575 | 118,725 | 118,930 | 155,880 | 155,880 |
| | 24-Oct | 31-Oct | 7-Nov | 14-Nov | 21-Nov | 28-Nov | 5-Dec | 12-Dec | 19-Dec | 26-Dec | 2-Jan | 9-Jan | 16-Jan | |