UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>OLD COLONY, LLC,<br><br>      Debtor | Case No. 10-21100-HJB<br><br>Chapter 11 |

**OBJECTION OF WELLS FARGO BANK, N.A. TO MOTION OF THE DEBTOR-IN-POSSESSION FOR AUTHORITY TO USE CASH COLLATERAL**

Wells Fargo Bank, N.A., successor in interest to The Jackson State Bank & Trust ("Wells Fargo"), by and through its undersigned attorneys, hereby objects to the *Motion for Order Authorizing and Approving Use of Cash Collateral and Grant of Adequate Protection* (the "Cash Collateral Motion") filed by Old Colony, LLC ("the "Debtor") because the Debtor cannot explain the disposition of more than $900,000 in pre-petition income and, hence, cannot be trusted to provide adequate protection to Wells Fargo for the use of its collateral during the bankruptcy case.

The Debtor's sole business is the operation of a hotel in Jackson Hole, Wyoming (the "Property"), the management of which the Debtor delegates to MetWest Terra Hospitality LLC ("MetWest"). Upon information and belief, MetWest receives and manages all cash and other revenue generated by the Property, and prepares all financial reports relating to the Property. Based on a partial accounting of information prepared by MetWest and the Debtor, it appears that the Debtor earned $989,004 of net operating income during the nine months preceding the bankruptcy, of which hundreds of thousands of dollars remains unaccounted for.

Wells Fargo is owed more than $17.5 million under a defaulted promissory note secured by a first mortgage recorded against the Property. The underlying mortgage grants Wells Fargo,

among other things, the senior lien against all "Rents" generated by the Property – including all of the cash and revenue that the Debtor cannot account for and all of the cash that the Debtor seeks to use through the Cash Collateral Motion. The debt to Wells Fargo matured in May 2009, but the Debtor has failed to make any payment to Wells Fargo since its last payment of $60,000 made on December 11, 2009. The Debtor has allowed more than $1.2 million in interest to accrue after making that payment while, at the same time, it has diverted more than $200,000 of Wells Fargo's collateral was diverted to a junior mortgage holder, and that more than $35,000 was paid to the Debtor's equity holders, with the remaining approximately $750,000 being diverted from the Debtor in ways that, in large part, remain unexplained. Compounding these problems, the Debtor's failure to provide a complete accounting for the $989,004 in net operating income is a breach of the Stipulation Authorizing and Approving Interim Use of Cash Collateral entered as an Order of this Court on October 15, 2010 (the "Stipulation").

Where Wells Fargo believes that (i) the Debtor cannot adequately explain the dissipation of its net operating income, (ii) the value of the Property is exceeded by the amount owed to it by the Debtor, (iii) the Property is in disrepair and the Debtor has no funds to invest in required maintenance and improvements, and (iv) the expenses associated with the Debtor's bankruptcy are likely to result in the Debtor generating a loss during its bankruptcy case, the Debtor cannot meet its burden to establish that its offer of a replacement lien on revenues in which Wells Fargo already has a security interest provides Wells Fargo with the adequate protection it is entitled to under the Bankruptcy Code. Wells Fargo requests, therefore, that the Cash Collateral Motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

1. On October 11, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Code") and thereby commenced the

1258881.3

above-captioned case (the "Case"). The Debtor – through its agent, MetWest - has continued in the management and possession of its business and the Property, as debtor-in-possession pursuant to §§ 1107 and 1108 of the Code. An official committee of creditors has not yet been appointed, the Debtor has only just filed its Schedules or Statement of Financial Affairs, and the initial meeting of creditors has not yet been conducted.

2. Prior to the Petition Date, the Debtor had entered into a loan arrangement with Wells Fargo evidenced by, among other things, the following documents, instruments and agreements (collectively, the "Loan Documents"):[1]

a. Loan Agreement dated May 10, 2007;

b. Promissory Note dated May 10, 2007 in the original principal amount of $16,500,000 (the "Note"). A true and accurate copy of the Note is annexed hereto as Exhibit A; and

c. Mortgage dated May 10, 2007, as amended by that certain First Amendment to Mortgage dated July 2, 2007 (the "Mortgage"). A true and accurate copy of the Mortgage as recorded is annexed hereto as Exhibit B.

3. In accordance with the terms and conditions of the Mortgage, Wells Fargo holds a valid, perfected, and unavoidable first lien position against the Property. Moreover, the Mortgage also provides Wells Fargo with a valid, perfected, and unavoidable first perfected security interest in the "Rents" from the Property as defined in the Mortgage to include "all present and future rents, revenues, income, issues, royalties, profits and other benefits derived

---

[1] To the extent not annexed to this Objection, each of the documents referenced in this Objection has either been produced by the Debtor or previously provided to the Debtor. In light of their volume, copies of these documents will be provided to the Court, the Debtor, and all other interested parties at the November 4, 2010 hearing to address the Cash Collateral Motion. Alternatively, they may be obtained from Wells Fargo's counsel upon request.

3

1258881.3

from the Property." Mortgage 1, 2, at 11. The Rents comprise all of the revenue generated by the Property and the Debtor conducts no business other than managing the Property through an agent.

4. The Note matured on May 9, 2009, but the Debtor failed to pay all outstanding amounts. The Debtor last made a payment on December 11, 2009 in the amount of $60,000.

5. As of the Petition Date, not less than $17,783,019.99 remained due under the Loan Documents including $16,500,000 in principal, $1,283,019.99 in interest, and all other fees and charges then due. The Debtor has not made any payment of any kind to Wells Fargo since December 2009.

### *The Debtor Failed To Provide Wells Fargo With Insight Into Its Financial Condition.*

6. The Debtor was and continues to be engaged in the business of operating the Property, which is a hotel located in Jackson Hole, Wyoming. With the Debtor's principals based in Massachusetts and its operations based in Wyoming, it is unclear whether or how active a role the Debtor actually plays at the Property. Upon information and belief, the Debtor has delegated operational and management authority to MetWest, which provides monthly financial reporting to the Debtor. Prior to October 29, 2010, however, the Debtor failed to provide Wells Fargo with any regular reporting concerning its financial performance during any portion of 2010.

7. To address this lack of reporting, Wells Fargo entered into the Stipulation near the inception of the Debtor's bankruptcy case which required, among other things, the Debtor to produce "a complete accounting of the revenue, receipts, and other income generated by the Debtor during the period from December 1, 2009 through the Petition Date, and the uses to

4

which that revenue, receipts, and other income was put during that same period." Stipulation, par. 4(a)(3).

8. While the Debtor produced documentation demonstrating that it earned $989,004 in net operating income during the period from January 1, 2010 through September 30, 2010, it failed to provide a complete accounting of how that revenue was used during the same period. A true and accurate copy of the Debtor's Summary Operating Statement for September 2010 is annexed hereto as Exhibit C. Where the Budget annexed to the Cash Collateral Motion asserts that the Debtor began the case with only $30,650 in cash, that left the Debtor to account for approximately $959,000 of income.

9. In an effort to address this open question, the Debtor provided a "Balance Sheet Detail" document showing that during various times in 2010 the aggregate of $400,695 was transferred from the accounts managed by MetWest to an account managed by the Debtor's equity holders. A true and accurate copy of the Balance Sheet Detail is annexed hereto as Exhibit D. Of that sum, the Balance Sheet Detail reflects distributions to or for the benefit of the Debtor's equity holders of at least $36,356.95. It also shows payments to the Debtor's junior mortgage holder of $203,962.50, but provides little detail as the remainder of the distributions. Upon information and belief, the Debtor's equity holders have executed personal guaranties of the debt to the junior mortgage holder. As a result, every dollar paid by the Debtor in satisfaction of that junior mortgage holder's debt directly benefited the equity holders at the expense of Wells Fargo.

10. Even if the Balance Sheet Detail were sufficient to explain the Debtor's use of a portion of its net operating income, it provides absolutely no explanation for the more than $550,000 that is not itemized.

1258881.3

### *The Debtor Defaulted Under The Terms Of The Loan Documents.*

11.     The failure to pay the outstanding amounts due under the Loan Documents and the failure to provide financial information concerning the operation of the Property were defaults under the Loan Documents.  Therefore, Wells Fargo made demand most recently for the immediate payment in full of all outstanding amounts then due under the Loan Documents on May 27, 2010.  When that demand yielded no payment or progress, Wells Fargo made a formal demand for the Debtor and MetWest to turnover the Rents being generated by the Property.  The Debtor ignored this demand and MetWest asserted that it had no obligation to satisfy that demand because its interest in the cash generated by the Property was somehow senior to Wells Fargo's perfected security interest.  A true and accurate copy of MetWest's letter in response to Wells Fargo's demand is annexed hereto as Exhibit E.

12.     Thereafter, Wells Fargo scheduled a public auction foreclosure sale of the Property for October 12, 2010, which was halted because of the Debtor's bankruptcy filing.

13.     Wells Fargo recently commissioned a Property Condition Assessment Report, the Report concluded that the Property was in disrepair, needing approximately $300,000 in maintenance and improvement expenses in the near term including the replacement of the Property's roof.  A true and accurate copy of this report and the related cost estimate is annexed hereto as Exhibit F.

14.     Wells Fargo has also commissioned a real estate appraisal, but that work has not yet been completed.  Nevertheless, given the nature of the current real estate market, Wells Fargo believes that the amount owed by the Debtor to Wells Fargo exceeds the market value of the Property and, therefore, there is no equity in the Property for the Debtor.

1258881.3

15. According to the budget (the "Budget") which accompanied the Cash Collateral Motion, the Debtor hopes to generate $511,927 in revenue during the first fifteen weeks of the Case and, at the same time, intends to spend $386,696. Within the Budget, the Debtor makes no provision for fees payable to the Office of the United States Trustee, real estate taxes, the needed capital improvements, or Wells Fargo.

16. Accordingly, Wells Fargo fully expects that the Debtor will lose money during this case and will cause the Property to experience further deterioration.

## ARGUMENT

17. As the holder of the first mortgage against the Property, Wells Fargo has the senior perfected security interest in the Property and all Rents, including all revenues generated by the hotel. See Mortgage, at 11; WYO. STAT. ANN. § 34-1-121 (2010).

18. In accordance with the provisions of the Bankruptcy Code, Wells Fargo's pre-petition security interest in the Rents continues with respect to all Rents generated by the Debtor during its bankruptcy case. See 11 U.S.C. § 552(b) (2010); Financial Sec'y Assur., Inc. v. Tollman-Hundley Dalton, L.P., 74 F.3d 1120, 1124-25 (11th Cir. 1990). Accordingly, the Debtor's offer to provide Wells Fargo with adequate protection in the form of a lien against those post-petition Rents would grant Wells Fargo nothing more than it already has. See, In re: Union-Go Dairy Leasing, LLC, 2010 Bankr. LEXIS 1468 (Bankr. S.D. In. 2010).

19. In seeking to use Wells Fargo's cash collateral, the Debtor bears the burden of establishing the existence of adequate protection to preserve the value of the property in which Wells Fargo holds a security interest. 11 U.S.C. §§ 361, 363(p)(1) (2010); see In re Lyons, 193 B.R. 637 (Bankr. D. Mass. 1996); In Re: Mosello, 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996).

1258881.3

20. Where the Debtor has failed to provide a complete accounting of Wells Fargo's pre-petition cash collateral and, as a result, failed to comply with the terms of the Stipulation, it cannot be counted upon to preserve the value of Wells Fargo's cash collateral during the bankruptcy. See In re Timbers of Inwood Forest Assoc., Ltd., 793 F.2d 1380, 1399 (5th Cir. 1986) (creditor entitled to adequate protection where its collateral is being misused or is deteriorating). The most glaring evidence of this problem is the diversion of hundreds of thousands of dollars of Wells Fargo's cash collateral to or for the benefit of the Debtor's equity holders prior to the Petition Date.

21. Similarly, where the Debtor has failed to invest in the proper upkeep and maintenance of the Property prior to the Petition Date and provides for no capital expenditures during the bankruptcy case, the value of the Property will likely decline during the Bankruptcy Case. This downward spiral in valuation will be compounded by the likely losses that the Debtor will incur during the bankruptcy case when the administrative fees, US Trustee's fees, real estate taxes, and other similar expenses are considered.

22. Under these circumstances, the Debtor has not provided Wells Fargo with adequate protection of its interest in the Debtor's assets.

1258881.3

## **CONCLUSION**

For the reasons set forth above, the Debtor cannot meet its burden to provide Wells Fargo with the adequate protection it is entitled to receive under the Bankruptcy Code, and, therefore, Wells Fargo respectfully requests that this Court deny the Cash Collateral Motion.

Respectfully submitted,

WELLS FARGO BANK, N.A.

By its attorneys,
RIEMER & BRAUNSTEIN, LLP

Dated: November 3, 2010

*/s/ Jeffrey D. Ganz*
Donald E. Rothman
drothman@riemerlaw.com
Jeffrey D. Ganz
jganz@riemerlaw.com
Riemer & Braunstein LLP
3 Center Plaza
Boston, MA 02108
617-880-3568

9

1258881.3